IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| REBECCA LEE COOPER, | ) | Case No. 02-21129 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |
| REBECCA LEE COOPER, | ) | Adversary No. 08-02027 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORP. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Rebecca Lee Cooper ("Debtor") filed a complaint seeking a determination that her student loan debt be discharged pursuant to 11 U.S.C. § 523(a)(8) on the ground that repayment of such debt would impose upon her an undue hardship, which allegations defendant Educational Credit Management Corp. ("ECMC") denied. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's student loan debt is not dischargeable pursuant to § 523(a)(8).

I. FACTUAL BACKGROUND

In 1988, Debtor secured the first of sixteen loans which she used to fund her and her son's education. In 1992 she earned an Associates Degree in Applied Science and in 1995 she

earned a Bachelor's Degree in Psychology. Her son took some education classes, but he did not received a degree in any specified discipline. Debtor is 64 years old and has been employed by the same company since she graduated with her degree in 1995. She lives alone in the same house that she has lived in for 34 years and has no house payment.

Debtor filed for protection under chapter 13 of the Bankruptcy Code on June 16, 2002. She made 36 monthly payments of $350 to the trustee. Debtor's gross annual salary in 2002 was $22,200[1], in 2006 it was $29,640[2], and in 2007 it was $31,020[3]. Debtor's current average net monthly income is $2,816.97[4], which, indicates an annual salary increase for 2008. Debtor's monthly expenses in 2002, when she filed for bankruptcy were $1,31.00[5]. Currently, she claims her expenses are $2,238.97.

Debtor has several medical conditions including depression, glaucoma, arthritis, and digestive disease. She was recently hospitalized for pneumonia and testified that she is in need of a total knee replacement. As of the date of the trial on this matter, Debtor is indebted to ECMC in the total amount of $110,550, and has defaulted on the loan. Debtor has exhausted all of her forbearance options. Debtor filed this adversary, seeking a determination that it would be an undue hardship for her to be required to continue making payments to ECMC under the terms of the loans.

---

[1] ECMC's Ex. 3.

[2] ECMC's Ex. 4.

[3] ECMC's Ex. 5.

[4] ECMC's Ex. 7.

[5] ECMC's Ex. 10.

II.  DISCUSSION

A.  Undue Hardship

Debtor contends that it would be an undue hardship for her to repay the remaining amount due on her student loans.  Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents.  The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor.  *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001).  Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the "totality of the circumstances" test.  *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *see also, Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).

In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case.  *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676.  The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged.  *Long*, 322 F.3d at 554.  The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on her student loan without reducing what the debtor and her dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139

3

(B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assisting them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *Vermaas v. Student Loans of North Dakota (In re Vermaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines the factors relevant to this case separately.

B. Analysis of the Totality of the Circumstances

1. Past, Present and Reasonably Reliable Future Financial Resources

The first factor the Court must consider is Debtor's past, present and reasonably reliable future financial resources. Debtor's present average net monthly income for the months of January through August of 2008 was $2,816.97.[6] Debtor's gross annual salary for 2008 should be $33,792, which is approximately an 8.9% increase from her 2007 salary.

---

[6]ECMC's Ex. 7.

Debtor's past economic resources have been very stable. She has been with the same company for thirteen years. Her tax returns for the years 2006 and 2007 indicate an adjusted gross income of $29,640 and $31,020, respectively.[7] Thus, there is evidence that Debtor has been able to earn a significant income and receive regular salary increases without incident. With regard to her future ability to earn income, as more fully discussed below, there was no convincing evidence presented that Debtor cannot continue to work. Although she testified that she has several medical conditions, neither she nor any other expert medical witness testified that her medical conditions limit her ability to work now or in the near future. Debtor herself testified that she was not planning to retire anytime soon.

2.  Reasonable Necessary Living Expenses

The second factor the Court must look at is Debtor's reasonable living expenses. Debtor lives quite modestly. Debtor's average monthly living expenses as determined through her testimony at trial are $2,153.52. With one exception, ECMC did not take issue with any of Debtor's monthly expenses and the Court finds that they are not unreasonable. The one exception is Debtor's monthly transportation expense. Debtor listed in her response to interrogatories a monthly transportation expense of $350.[8] Debtor does not have a car payment. There was some confusion at trial as to whether this figure included regular maintenance and necessities such as oil changes, new tires, gas, etc. or just larger repairs. The evidence is that Debtor's job involves a lot of driving. She is reimbursed through her employer a certain amount per gallon, which can fluctuate depending on the cost of fuel, and that amount more than compensates Debtor for the expenses she incurs related to regular maintenance and gas for her

---

[7] ECMC's Exs. 4 & 5.

[8] ECMC's Ex. 11.

vehicle. She also testified that her car has over 200,000 miles and she may need to replace it in the near future. She did not, however, provide the Court with any evidence or guidance regarding how much she would need for a monthly car payment, therefore, any amount allotted in Debtor's monthly expenses for this would be purely speculative. The Court finds that Debtor's figure of $350 per month for transportation is inclusive of large repairs as well as regular maintenance and gas. Should Debtor need to purchase a new vehicle in the near future, the $350 she has budgeted for transportation costs, coupled with her monthly mileage reimbursement from her employer, may be sufficient to cover a car payment.

Debtor also testified that the house which she has lived in for 34 years is in desperate need of repair. She testified that the roof is caving in and that there are serious foundation issues. Again, there was no evidence of any estimates from contractors or other professionals regarding an amount that it would take to rectify the problems. Debtor testified that these issues were present in 2002 when she initially filed for bankruptcy. The fact that Debtor has not taken even the initial steps to fix some of these house repairs and that she only allowed $65 per month in her expense budget for home repairs, leads to the conclusion that they must not be so pressing or imperative that they would impact Debtor's ability to continue working and making payments on her student loan debt.

Debtor has sixteen different student loans which have not been consolidated. Accordingly, the Court must determine whether repayment of the student loans constitutes an undue hardship on a loan-by-loan or debt-by-debt basis. *See Nelson v. Iowa College Aid Comm'n, et al.*, 2005 WL 1320139 (Bankr. N.D. Ia.. 2005) *citing Andresen* 232 B.R. at 136-137. In other words, even if Debtor may not have the ability to make payments on all of her student loans and maintain a minimal standard of living, if she can afford to make payments on

some of the loans, those debts would not be dischargeable as imposing an undue hardship on her. A debtor has the burden of proof on this issue. *Ford*, 269 B.R. at 675. In this case, it is not necessary to engage in a loan-by-loan analysis because the monthly payment proposed by ECMC is feasible based on Debtor's income and expenses. ECMC produced evidence of what Debtor's estimated monthly payment would be under an Income Contingent Repayment Plan ("ICRP"), available as part of the William D. Ford program. Debtor's total student loan payment to ECMC would be $346 per month[9]. Based on Debtor's monthly income of $2,816.97, and her expenses of $2,238.97 (which includes an additional amount of $85.45 for homeowner's insurance), the amount proposed by ECMC through the ICRP is feasible if Debtor engages in proper money management and continues to work, which is what she testified that she intends to do.

### 3. Other Relevant Facts and Unique Circumstances

As to the third factor the Court must evaluate, Debtor has not presented evidence of unique facts or circumstances that the Court believes will cause an undue hardship for Debtor to repay the student loan. The mere fact that Debtor is near normal retirement age does not mean that the debt should be discharged. *See, e.g., Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 779 (7th Cir. 2002) (finding that by returning to graduate school at age 45 and voluntarily assuming debt, debtor must have believed he had future earnings potential); *see also, In re Houshmand*, 320 B.R. 917, 921-22 (Bankr. W.D. Mo. 2004) (finding debtor took out student loan at age 48; not unreasonable to expect him to repay on loan after eligibility for retirement); *In re Mandala*, 310 B.R. 213, 222 (Bankr. D. Kan. 2004) (finding fact that obligations will persist past debtor's retirement age is the result of her choosing to return to school on borrowed

---

[9] ECMC's Ex. 13.

money at age of 36). In this case, there are certain facts that mitigate the effect of age as an indicator of undue hardship. Debtor took out these loans later in life in order to obtain her degree in Psychology. Specifically, she obtained the original loan in 1988 when she was 44 years old. Debtor testified that she has exhausted her forbearance options. By placing a loan in forbearance, Debtor should have understood that the effect of those requests would be to either extend the length of the repayment period or increase the amount to be paid, including the amount of the required monthly payments, or both. As a result of having requested and received these forbearances, Debtor might reasonably expect therefore to have been required to pay on this debt for longer than previously planned. It does not therefore seem unreasonable to suggest that Debtor should be required to continue to pay on her student loans and continue to work in order to generate the income necessary to make those payments. Additionally, she testified that she does not want or plan to stop working any time soon.

Debtor testified that she suffers from a number of medical conditions including depression, glaucoma, arthritis, and digestive disease. She testified that she was recently hospitalized for pneumonia and that she is in need of a total knee replacement. She also testified that she has no sick days left through her employment until next October. No other medical evidence was presented. On the one hand, Debtor is apparently asking the Court to draw the conclusion that her health conditions limit her ability to perform tasks that would be required of her at her job, however, on the other, she herself testified that she has no intention of retiring any time in the near future. The evidence does not support a conclusion that Debtor cannot continue to work or that her medical conditions significantly limit her ability to earn an income or pay on her student loans.

The courts in this district and elsewhere in this circuit have held that in determining

whether the debtor is capable of repaying a student loan without undue hardship, it is appropriate to consider any restructuring options available to the debtor. *In re Bray*, 332 B.R. 186, 198 (Bankr. W.D. Mo. 2005); *Pollard v. Superior Community Credit Union (In re Pollard)*, 306 B.R. 637, 653 (Bankr. D. Minn. 2004); *Rose v. United States Department of Education (In re Rose)*, 227 B.R. 518, 525-526 (W.D. Mo. 1998), *aff'd* 187 F.3d 626 (8th Cir. 1999) (bankruptcy court had to consider debtor's ability to repay, not just over original term of loan, but over 25-year term available as refinancing options).  As noted previously, Debtor is eligible for participation in the ICRP under which her payments on her student loan debt would be based on her adjusted gross income, with her payment amount subject to reevaluation each year she is in the program. With this in mind, the Court notes that Debtor filed her chapter 13 bankruptcy in 2002.  She was in chapter 13 for 36 months and made her last monthly payment of $350 in March, 2006.  In 2002, when she started making her chapter 13 payments, her salary was $22,200.  The evidence is that Debtor's monthly payment under the ICRP would be $346 per month.   Based on the fact that she was able to pay essentially the same amount of money to her chapter 13 plan when she was making approximately $11,500 less a year, even with her expenses being $1,107 higher now then they were when she was paying off her chapter 13, the Court finds that Debtor has the financial ability to pay on her student loans.  Her higher salary offsets her increased expenses and, based on the fact that she has received regular salary increases in the past, there is no reason to believe she will not continue to earn more money each year that she continues to work.  This analysis is confirmed by a detailed examination of Debtor's actual current net income and expenses as noted above.  As a matter of fact, if these numbers are correct, she should have enough to make the ICRP payment and provide for some of her unmet needs.

Based on the Court's evaluation of all of the evidence presented in conjunction with the

totality of the circumstances, the Court finds that Debtor's reasonably foreseeable financial prospects include the ability to earn a salary similar to, if not more than, the salaries that she has earned in the past.  Her expenses may be increasing, but not at a rate faster than her salary and not in such a way that she cannot manage them while still paying on her student loans.  The Court concludes that it will not be an undue hardship on Debtor to pay the remaining amount owed on her student loan debt.

For all of the above reasons, the Court finds that the indebtedness owed by debtor Rebecca Lee Cooper to defendant Educational Credit Management Corp. is not dischargeable pursuant to 11 U.S.C. § 523(a)(8).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated: <u>December 12th, 2008</u>              /s/ Dennis R. Dow
                                        THE HONORABLE DENNIS R. DOW
                                        UNITED STATES BANKRUPTCY JUDGE

Copies to:
Noel Magee
N. Larry Bork